(No. 31665.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM RUSSELL SIMMONS, Plaintiff in Error.

*Opinion filed November 27, 1950.*

LEONARD J. DUNN, of West Frankfort, and STEWART PEARCE, of Carmi, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, JOSEPH W. HICKMAN, State's Attorney, of Benton, and KENNETH PEARCE, State's Attorney, of Carmi, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Plaintiff in error, William Russell Simmons, (defendant,) was indicted in the circuit court of Franklin County on the charge of manslaughter by the negligent operation of an automobile upon the public streets in the city of West Frankfort, resulting in the death of Phyllis Joy Paternel. The defendant pleaded not guilty, was tried by a jury and found guilty, and sentenced to the penitentiary. He brings his case here for review by writ of error, claiming that the evidence does not show guilt beyond a reasonable doubt, and that the circuit court erred in giving certain instructions on behalf of the People, and refusing certain other instructions offered on behalf of the defendant.

Upon change of venue the case was tried in White County, and the facts shown by the record are substantially as follows: On October 22, 1949, the defendant, a resident

of West Frankfort, drove his automobile to the neighborhood of a tavern known as the 212 Tavern. He parked his car in the neighborhood because he had a flat tire, and went to this tavern. He was in the tavern, off and on, all afternoon, and drank intoxicating liquor, he claiming it was only beer, and others claiming it was beer mixed with whisky. At any rate, shortly before six o'clock in the evening a messenger came from the service station repairing his tire, requesting the key to the car, which defendant delivered, and the car was shortly thereafter driven up and delivered to the defendant near the tavern. He then proceeded in the car down the main street two or three blocks, and turned on to Monroe Street, not far from the business portion of the city. At the scene of the accident a railroad company operates a viaduct over the street, which is supported by piling and heavy poles, leaving a roadway a little over seventeen feet wide, with a sidewalk on one side, which at the time was sloppy·from rain. About this time two girls, deceased and Rita June Franko, were walking south upon Monroe Street, close to the curb. The Franko girl testified that she heard no sound of a motor or of a tire squeak, and that they were struck by a car. They were walking in the edge of the street because the sidewalk under the trestle was muddy, as there had been a rain a few days before.

Another witness observed the car which struck these two girls, being in another automobile a short distance behind them. It was the judgment of this witness the car was going fifty-five to sixty miles per hour. The Paternel girl was killed almost instantly. The impact was so violent that her skull was fractured, the neck broken, the ribs, pelvic bones and one of her legs and arms broken, and her· chest and thorax caved in, and she was dragged or carried by the automobile some seventy-five feet.

The defendant testified he stopped some three blocks from the scene of the accident, but did not come back,

claiming he did not know he had hit anything. He concedes he was running from twenty-five to thirty-five miles per hour. The evidence shows almost beyond question that he was drunk when he left the tavern, in the neighborhood of six o'clock, and an eyewitness who followed the car says he was hugging the curb very closely.

It was stipulated by the defendant and his counsel, in open court, that the defendant was driving the car that killed Phyllis Paternel, and that shortly thereafter he attempted to create a circumstantial situation for his own defense, that is, immediately after the accident he had taken his car back to the parking lot on which he had kept it during the afternoon, and called attention of the attendant to the fact that the rim of the right headlight was gone, and that somebody had been driving his car without his consent. This lamp rim was found near the place the fatality occurred. He also complained to an officer to the same effect, which circumstance was wholly fictitious, and made for the purpose of deflecting attention from himself to some possible person illegally using his car.

There were at least eight witnesses who testified to defendant's intoxication. It is true he placed witnesses on the stand who testified that he was not intoxicated, but the weight of their testimony is somewhat affected by the fact that one was his wife, and the other his sister, both of whom had a natural interest in his well-being; and the tavern keeper and barmaid, who also had a like interest, because of the possible liability from suits under the Dram Shop Act. We are convinced that the evidence showed beyond any reasonable doubt that the defendant was intoxicated when he started from the tavern in his car, and in less than five blocks, driving at an excessive speed, ran over and killed a pedestrian at the edge of the street. The question of the weight of the evidence was for the jury, and there was ample testimony in this record to support its finding of guilt.

The defendant complains of instructions given on behalf of the People. He makes particular reference to People's instructions 1 and 2. Instruction 1 defines involuntary manslaughter in the language of the statute. Instruction 2 instructed the jury "that under the laws of the State of Illinois, it is an unlawful act for any person to drive or operate a motor vehicle upon any public highway of this State while drunk or intoxicated." Defendant claims that by these two instructions the court directed the jury to find the defendant guilty, if it believes he was drunk. Standing alone, these instructions might be subject to objection, but defendant's instructions 12 and 13, advise the jury that such intoxication as to make the driving of a car unlawful is that degree of intoxication which would render him incapable of giving that care and attention to driving that a man of prudent or reasonable intelligence would give. Defendant's instruction 13 defined intoxication, and also told the jury that even though it found the defendant was intoxicated, that in itself would not be sufficient to support a verdict of guilty, since it must further find that such intoxication was the proximate cause of the death of the deceased. The People's instructions 1 and 2, taken in connection with defendant's instructions 12 and 13, correctly and accurately instructed the jury as to the law applicable to that feature of the case. It requires no citation of authority, (since it has been stated so many times,) that where a series of instructions correctly states the law, the defendant does not have the right to single out one instruction which, standing alone, might be inaccurate.

Defendant places great reliance upon the case of *People v. Mulcahy*, 318 Ill. 332, to show error in giving People's instruction 2. An entirely different principle was involved in that case. There an officer was in a cigar store to escape from the intense cold weather. There was drinking and gambling going on therein, and a drunken man had his pistol removed from his pocket and laid upon a table, and

as the officer backed up towards the table the deceased called to him to look out, "there is a gun behind you;" whereupon the defendant drew his gun, but seeing the weapon was lying upon the table, he started to let the hammer down and his revolver went off and killed the girl who had warned him. In that case the instruction referred to the intoxication of a person other than the defendant, and was brought into the case solely upon the theory that had the officer arrested the intoxicated person the sequence of events would not have caused him to draw his own weapon, accidentally killing the deceased. The error consisted in failing to limit proof of intoxication to the officer. We are unable to see the relevancy of a case of this character to one wherein the driver of an automobile is drunk, and the fact is established to prove his reckless and illegal killing of another.

A more nearly parallel case is that of *People* v. *Pierce,* 369 Ill. 172, where the driver of a car was convicted of manslaughter, and instructions similar to those above were given to the jury. In overruling the contention of the error, the court said: "Instructions numbered five and six gave to the jury the substance of the statutes, which made the alleged acts of defendant unlawful, and the chief objection to them is that an explanatory instruction was necessary, telling the jury how the two instructions should be considered. The series of instructions gave the jury what aid it required, if any, in considering the applicability of these two instructions."

Defendant also complains of People's instruction 3, which is a statement of the law in the language of the statute, which made the operation of an automobile through the business district of any city or village, in excess of certain speeds, *prima facie* evidence that the motor vehicle was running at a greater speed than was reasonable and proper. Defendant contends that the giving of this instruction makes it mandatory for the jury to find the

defendant guilty, because of the inclusion of the language that speed above a certain rate constituted *prima facie* negligence. If there was any error in this respect it was cured by the giving of defendant's instructions 8 and 11. Instruction 8 told the jury that before it could find the defendant guilty "you must find that the People have proven every material allegation of the indictment beyond all reasonable doubt. It is not sufficient that you merely find the Defendant was negligent. You must find that such negligence was so reckless or wanton and of such a character as to show an utter disregard for the safety of others under circumstances likely to cause injury. This must also be proven beyond all reasonable doubt. The court also instructs the jury that such negligence, if so proven beyond all reasonable doubt, must also be the proximate cause of the death of the deceased." Also, in defendant's instruction 11, the jury was told that "not every violation of statute constitutes criminal negligence, as not all such negligence is reckless or wanton and of such character as shows an utter disregard for the safety of others; and where acts or circumstances are attributable to either an innocent or a criminal cause, the innocent hypothesis will be adopted."

The giving of People's instruction 3, while not advisable, cannot be considered harmful to the defendant, when the court also lays down in such strong language what violations of the statute must be shown in order to constitute criminal negligence. It must be kept in mind that in the instant case the defendant admits he had been in a tavern and drinking at least three different times during the afternoon. He also testified he was operating his automobile from twenty-five to thirty-five miles an hour when it struck the deceased, and dragged her some seventy-five feet without his noticing, so he says, that he had hit anything. The deceased weighed one hundred forty pounds, and the impact broke the rim from the headlight. We have many

times held that where the driver of an automobile, charged with manslaughter, admits he was running at a rate of speed declared by the statute regulating traffic to be *prima facie* evidence of negligence, it is a question for the jury whether such a rate of speed, together with a failure to keep such a lookout as would enable a driver to see persons in the street at the time and place where the accident occurred, constitutes such a wilful and wanton disregard of safety as to amount to criminal negligence. *People* v. *Schwartz,* 298 Ill. 218; *People* v. *Toohey,* 319 Ill. 113.

The defendant also admits that even after he stopped he made no inquiry or investigation as to whether he had hit anything or anybody, and then tried to concoct a scheme by which the authorities would be led to suspect that some innocent person had taken his car and caused the accident. This comes in the same classification as flight from the scene of an accident, which gives the jury the right to consider whether defendant's actions were attributable to and controlled by consciousness of guilt or fear of consequences. *People* v. *Smaszcz,* 344 Ill. 494; *People* v. *Pierce,* 369 Ill. 172.

Complaint is also made of the refusal of the court to give certain refused instructions on behalf of the defendant. Refused instruction 5 told the jury that a defendant should not be condemned unless the evidence excludes from its mind all reasonable doubt. This instruction is substantially the same as was given by defendant's instruction 5, which told the jury that the burden was upon the prosecution to make out and prove to its satisfaction, beyond all reasonable doubt, every material allegation in the indictment, and that unless that was done the jury should find the defendant not guilty. Defendant's instruction 1 also told that jury that if, from the evidence, two conclusions may be reached, one of innocence of the de-

fendant and one of guilt, it was its duty to adopt the conclusion of innocence and find the defendant not guilty.

Defendant also complains of the refusal of the court to give defendant's instruction 9, which required proof of criminal negligence, and a moral certainty to the exclusion of every other hypothesis. Defendant's given instruction 8, above referred to, covered everything contained in this refused instruction.

Defendant also complains of the refusal to give defendant's instruction 23, to the effect that every violation of the statute does not constitute criminal negligence, as not all such negligence is reckless or wanton and of such character as to show an utter disregard for the safety of others. The substance of this instruction was given in defendant's instruction 11, referred to above, which set out exactly the same principle in slightly different language.

We cannot refrain from calling attention of counsel to the excessive number of instructions offered on behalf of the defendant. The court gave sixteen instructions on behalf of the defendant. It also refused twenty-seven instructions on behalf of the defendant. An examination of the entire series of forty-three instructions discloses that defendant either repeated the same principle in different language, or made slight variations, with the obvious purpose to influence the jury by the great number of variations in which the rights of the defendant were set forth. The offering of so many instructions is not only wholly unnecessary and improper, but places a great burden upon the trial court to single out of a total of over fifty instructions the proper ones to give in a case where the issues are comparatively simple.

We have examined the evidence in this case with great care, and are satisfied that the charge of reckless and wanton killing by automobile by a combination of excessive speed and drunkenness in the public streets of a good-sized city

is established beyond a reasonable doubt. We are also satisfied that what errors, if any, were committed in the giving of the complained of instructions, as well as in the refusal of the above instructions of the defendant, were entirely cured by the giving of other instructions which, as a whole, set out the law correctly. The defendant has had a fair trial, and in our judgment was properly found guilty of manslaughter.

The judgment of the circuit court of White County is affirmed.

*Judgment affirmed.*