2 Ill. App.3d 206 (1971)
276 N.E.2d 395
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
JOSEPH MILLER et al., Defendants-Appellants.
Nos. 54054, 54055 cons.
Illinois Appellate Court  First District.
November 5, 1971.
*207 *208 Gerald W. Getty, Public Defender, of Chicago, (Suzanne M. Kohut and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.
Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and George M. Elsener, Assistant State's Attorneys, of counsel,) for the People.
Affirmed in part, reversed in part.
Mr. JUSTICE LORENZ delivered the opinion of the court:
An indictment was returned against both defendants charging them in count one with armed robbery and in counts two and three with aggravated battery.[*] The court, sitting without a jury, found both defendants guilty on all counts of the indictment but sentenced them only on counts one and two. Miller received two concurrent sentences of three to six years and Brown received two concurrent sentences of two to four years. On appeal defendants contend:
(1) that the identification of them as the assailants was insufficient to sustain their conviction,
(2) that various prosecutorial conduct deprived them of a fair trial, and
(3) that because the convictions resulted from the same conduct it was improper for the court to impose sentences for more than one crime.
Wilburn Watkins, the sole prosecution witness, testified that he lives at 1515 South Sawyer in Chicago. At approximately 7:00 P.M. on January 28, 1967, he went into a poolroom near 16th and Kedzie in Chicago. After talking with friends, he began playing pool with a man he knew *209 only as "J.W." As the game progressed Watkins noticed that the defendants, one of whom, Brown, he had seen many times before and both of whom he identified in court were watching him and "J.W." In fact at one point Miller was so close that Watkins could not play his game. Shortly before midnight defendants left the pool hall. When Watkins left to go home, shortly after midnight, he walked alone on Kedzie to 16th Street. As he walked in a westerly direction on the north side of 16th Street he noticed the defendants standing near a building on the opposite side of the street. As he continued on 16th Street they crossed the street into a lighted area and walked behind him. When Watkins came to Sawyer Avenue, a lighted street, he turned north on the west side of the street with the defendants still following him. After proceeding only a short distance on Sawyer, Miller, carrying a gun, came up to Watkins and hit him repeatedly. Miller, looking directly at Watkins, said he was going to kill Watkins. After Brown began beating him, Watkins fell to the ground where Miller kicked him numerous times. One of the defendants went through Watkins' pockets taking $44, his wallet, driver's license, other identification cards and keys. Miller then told Watkins that if he did not lie there for five minutes he would be killed. The pair then fled on foot. After unsuccessfully trying to find a police car, Watkins went home and called the police. The next day Watkins saw Brown on the street but before the police could be called Brown had disappeared.
Charles Jones testified for the defense that Miller, a close friend, came to Jones' house at 4:30 P.M. on January 28, 1967. They played cards and records until 8:00 P.M. when they left for the "Bucket of Blood," a tavern, for a drink. They then went on to "Harold's Place," another tavern, where at 10:00 P.M. they were joined by Diane Jones. The trio remained in "Harold's Place" drinking, talking and dancing until 2:00 A.M. the next morning when they went to the "Squeeze Club." They remained there until 4:00 A.M. When they left the "Squeeze Club" Diane walked home alone. Jones and Miller walked together for awhile and then went their separate ways. Jones did not see Brown at all that day.
Diane Jones, a good friend of defendants, testified for the defense that she met Miller and Charles Jones at 10:00 P.M. on January 28, 1967, at "Hal's," a tavern. They drank, talked and danced until, at 2:00 A.M. the next day, they went to "Squeeze After-Hour Tavern" where they drank, talked and shot pool until 4:00 A.M., when she was walked home by Jones and Miller. She did not see Brown that night.
Joe Miller, Junior, testified on his own behalf that he lived at 3136 West 15th Street in Chicago. At 4:00 P.M. or 4:30 P.M. on January 28, 1967, he went to Charles Jones' house. They played cards and records *210 until 8:00 P.M. when they went to "Field's Tavern" and "Bucket of Blood." At 9:00 P.M. or 9:30 P.M. they arrived at "Hal's Tavern" where, at 10:00 P.M., they were joined by Diane Jones. The three remained at "Hal's" drinking, dancing and talking until 2:00 A.M. the next morning when that tavern closed. They then "went down to the Squeeze," where they drank and shot pool until it closed at 4:00 A.M. When Jones and Miller left they walked Diane home and then went home themselves. Miller, although he knew Brown and had seen Watkins before, did not see either on the night in question. In mid-February, Miller learned he was sought by the police but he was not arrested until April 8, 1967. He denied all connection with the crime.
William Edward Brown testified in his own behalf that he lived at 3142 West 15th Place in Chicago. Although he knew Miller, Charles Jones, Diane Jones and Watkins he did not see them on January 28, 1967, and he denied all connection with the crime. He spent January 28th repairing his door and lock which were damaged in an attempted burglary. His landlord saw him that day. About two weeks before he was arrested, a precinct captain told him that the police were looking for him. He went to both Central Police Headquarters and the Maxwell Street Police Station in an attempt to determine whether the report was true. At both places he was informed that the police were not looking for him. Sometime later Brown discovered that Police Officer Davis wanted to talk to him. Brown contacted Davis and a meeting was arranged at which Brown was arrested.
On cross-examination of all defense witnesses attention was directed to the ability of each to accurately recall what he or she had done on the date of January 28, 1967.

Opinion
Defendants first contend that the identification testimony of the complaining witness, the only person called upon to testify for the State, was insufficient to establish beyond a reasonable doubt, that they beat and robbed Watkins. We cannot agree.
 1, 2 The defendants concede and it is well settled law as stated in People v. Tribbett (1968), 41 Ill.2d 267, 271 that:
"The testimony of a single witness, if it is positive and the witness is credible, is sufficient for a conviction even though the accused has contradicted the testimony."
The essence of defendants' contention is that the opportunity of Watkins to observe his attackers was so limited and impaired that it lacks that positive character required to sustain their conviction. This contention, however, does not find support in the record. Moreover, the record supports *211 the State's position that Watkins' testimony demonstrated that he had ample opportunity to observe defendants before, during and after they beat him. Watkins saw both defendants several times before January 28, 1967. He knew Brown and both defendants knew him. Watkins saw both defendants as they watched him play pool that night, Miller at one point getting so close to him that Watkins had to stop playing for awhile. He saw them as they left the pool hall and, after he left, as they crossed 16th Street from the darkness into the light. Watkins saw them as they followed him, came up to him and beat him to the ground under light emitted from street lights. Miller was face to face with Watkins when Miller threatened to kill him. Watkins saw both defendants flee after beating him and also saw Brown on the street the next day. He made two positive in-court identifications of both defendants, once in Branch 44 of the Felony Court and once at the trial of this case. This account does not lead this Court to believe that the identification of defendants was anything less than positive and based upon numerous observations prior to the incident and the trial judge so found.
 3 Defendants contend that where the identification testimony is that of a single witness there must be some fact or circumstance which aids the trier of fact in determining the weight to be given the identification testimony. In support of this theory they cite People v. Oswald (1963), 26 Ill.2d 567. The standard advanced by defendants is appropriate for cases in which the identification is not positive (People v. Washington (1970), 121 Ill. App.2d 174, 179), but where the identification testimony is positive, and the witness credible as in this case, that testimony alone may be sufficient to establish defendants' guilt beyond a reasonable doubt (People v. Williams (1968), 104 Ill. App.2d 329, 333), even though defendants introduced evidence of alibi. People v. Renallo (1951), 410 Ill. 372, 377.
Defendant Brown calls our attention to alleged prosecutorial misconduct which purportedly prejudiced his cause. The basis of his contention lies in the cross-examination of him regarding the whereabouts of Officer Davis, the arresting officer; questions relating to the date, time and place of Brown's arrest; references to photographs and a resulting implication that Watkins identified Brown at a line-up; and the questioning of Brown with regard to the whereabouts of witnesses who could substantiate his alibi.
 4, 5 In People v. Grodkiewicz (1959), 16 Ill.2d 192 the Supreme Court restated the principle which is to be applied in non-jury cases. The court stated at pages 199 and 200:
"This case was tried before the court and in such a hearing "the court *212 is supposed to disregard all evidence heard except that which is competent and relevant, and is considered to possess such legal discernment when determining the degree of punishment." (People v. Grabowski, 12 Ill.2d 462, 467.) This rule applies to arguments and remarks of counsel. Unless it affirmatively appears that the court was misled or improperly influenced by such remarks and that they were productive of a judgment and sentence contrary to the law and the evidence, we will not reverse."
 6 Assuming arguendo that the conduct of the prosecutor was improper, an analysis of the record in this case reveals that the judgment was not contrary to the evidence, the purported insinuations, if improper, were not of the aggravated character found in People v. Nuccio (1969), 43 Ill.2d 375 and there is no showing that the trial judge took those purportedly improper insinuations into consideration when he found defendants guilty as in People v. McGovern (1970), 126 Ill. App.2d 393, 400. Therefore, a reversal of Brown's conviction on this ground would not be proper.
 7 Brown also contends that the concealment of a police report by the prosecutor and the failure of the court to order production of that report was error.
This contention arises out of the following colloquy:
"MR. SCHREIER [Assistant State's Attorney]: As a matter of fact, Mr. Brown, what day were you arrested by Officer Davis?
THE WITNESS: A. I think it was March 14th.
Q. Could it have been March the 7th 
MR. TISCI: [Assistant Public Defender]: Object. He answered the question.
MR. SCHREIER: He said he thought it was the 14th, Counsel.
MR. TISCI: That's right. And now you are asking about every day in the month. He told you when it was.
THE COURT: Overruled.
MR. SCHREIER: Q. Could it have been March 7th, 1967?
THE WITNESS: A. It could have been.
Q. You are not sure, are you?
A. No.
Q. And as a matter of fact, he arrested you at 1530 South Kedzie Avenue, is that correct?
A. No, that is not a fact.
Q. And it wasn't at a liquor store at approximately 8:00 P.M.?
A. No, it is not a fact. That is not  that is not right.
Q. It wasn't at 8:00 P.M. on March 7th?

*213 A. That is wrong, no, not right.
MR. TISCI: Your Honor, I object. If the State's Attorney is going to refer to the police report, I would like to have a copy of it.
MR. SCHREIER: I now refer to my own file as I ask the question, Your Honor. I think this has been kind of a longstanding practice in this building, that the State's Attorney might refer to his notes in asking a question.
MR. TISCI: And if his notes consist of a police report, I would like to have a copy of it. He is talking about with reference to the officer that he has now referred to.
If the Court please, I will acknowledge the information pursuant to the officer's report.
THE COURT: Proceed with your cross-examination.
MR. SCHEIER: Thank you, Judge."
There is nothing in the above to support defendant's contention that the State's Attorney was consulting a police report.
Defendants lastly contend that the trial judge improperly sentenced them to concurrent terms for offenses resulting from the same conduct.
We agree.
 8, 9 After finding defendants guilty on all counts of the indictment the court sentenced them to concurrent terms for the offenses of armed robbery and aggravated battery. In People v. Baker (1969), 114 Ill. App.2d 450, 453-457 this court has stated the background to and principles governing this area of the law and it is unnecessary to reiterate such at this time. Suffice it to say that where the facts of the case demonstrate that separate and distinct conduct resulted in the commission of more than one offense, even though the acts were not wholly unrelated in time and fact, concurrent sentences are proper. Since the decision in Baker the Supreme Court treated the same subject in People v. Stewart (1970), 45 Ill.2d 310, 312-313. The court, at page 313, said:
"Nothing in the record in this case suggests that the acts which constituted the offense of aggravated battery were independently motivated or otherwise separable from the conduct which constituted the offense of attempted robbery. The entire `series of acts' were a part of `the same transaction' * * * the attempted robbery."
The force used by defendants in the instant case was that used to effectuate the armed robbery and was not, as in People v. Baker, supra, also used after the robbery had been completed. Therefore, because the acts of defendants, which if considered separately constituted the offense of aggravated battery, were not "independently motivated or otherwise separable" from the offense of armed robbery it was improper for defendants *214 to be sentenced on either charge of aggravated battery.
The judgment entered on the charge of armed robbery is affirmed and the judgment entered on the charge of aggravated battery is reversed.
Judgment affirmed in part, reversed in part.
ENGLISH, P.J., and DRUCKER, J., concur.
NOTES
[*] One of the aggravated battery counts, count two of the indictment, charged that the defendants "intentionally and knowingly, without legal justification, committed a battery on Wilburn Watkins which caused great bodily harm to [him] * * *. "The second aggravated battery count, count three of the indictment, charged that the defendants "in committing a battery on Wilburn Watkins, used a deadly weapon * * *." See Ill. Rev. Stat. 1965, ch. 38, par. 12-4(a) and 12-4(b) (1).