THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN W. GRAY, a/k/a BILL GRAY, Defendant-Appellant.

(No. 71-198; )

Third District —September 27, 1972.

Walter J. Sebo, Public Defender, of Canton, for appellant.

Arthur D. Young, State's Special Prosecutor, of Lewistown, for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The jury found John Gray, defendant, guilty of reckless homicide for which offense he was sentenced by the Circuit Court of Fulton County to a term of from 1 to 3 years in the penitentiary from which judgment and sentence he appeals.

On August 5, 1967, defendant was driving his automobile in a west by southwest direction on Route 100 on the outskirts of the village of St. David, Fulton County, Illinois. His automobile collided with a Honda motorcycle at a point where Route 100 intersected a coal haulage road. The accident occurred on a dark night in an area that was not illuminated by artificial lights. The road on which the accident took place was straight and flat. At the time of the collision another vehicle was proceeding in the opposite direction. Two of the occupants of the vehicle testified for the State and two for the defendant. As a result of the collision the operator of the Honda, Roger Lidwell, sixteen years of age, sustained injuries from which injuries he died.

On this appeal defendant argues he was denied a speedy trial, he was not proved guilty beyond a reasonable doubt, he did not receive a fair trial because of trial errors and the sentence imposed was excessive.

We shall first consider defendant's argument that he was denied a speedy trial in violation of Article 1, Sec. 12, Ill. Constitution, 1970 and the Sixth and Fourteenth Amendments of the Federal Constitution. As disclosed by the record the incident which is the basis of the charge occurred on August 5, 1967. Defendant was indicted on October 4, 1967, and first appeared in court on December 12, 1967, at which time

bail was fixed and defendant, complying with the conditions thereof, was released. On January 19, 1968, defendant first appeared with privately retained counsel. By motion filed January 24, 1968, and amendments filed February 28, 1968, defendant sought dismissal of the charges or some of them. On February 29, 1968, the dismissal motion was heard, taken under advisement and on March 7, 1968, two counts of the indictment were dismissed and the motion was denied as to the other two counts of the indictment. Also on January 24, 1968, defendant moved for the production of the names of witnesses and for the production of any confession, the State filing its response thereto on March 12, 1968. On April 1, 1968, defendant was arraigned and pleaded not guilty to each of the counts of the indictment, the court advising the State that an election would have to be made when the case was set for trial as to which of the counts would be prosecuted. The docket entry on April 1, 1968, is silent concerning any continuance either generally, to a particular term of court or to a date certain.

According to the record nothing occurred after April 1, 1968, until April 1, 1969, when defendant's counsel filed his petition informing the court that in the November election of 1968 he had been elected State's Attorney for Fulton County and he therefore requested leave to withdraw as counsel for the defendant. On the same day defendant's counsel was permitted to withdraw as his attorney and Arthur Young was appointed special prosecutor. On April 17, 1969, defendant appeared *pro se,* indicated that he was indigent and the public defender, Walter Sebo, was appointed to represent him. On this date, June 1, 1969, was designated as the last date for filing motions and "cause continued".

Nothing happened for over two years, the record being barren of any motions, orders or appearances of the parties until April 5, 1971, at which time defendant's attorney moved to dismiss the charge alleging defendant had not been placed on trial in compliance with Sec. 103—5, chap. 38, Ill. Rev. Stat. 1963. By separate motion on the same date defendant's counsel moved for the production of the names of witnesses, statements and other evidence. The motion to dismiss the charges was denied, parts of the discovery motion were granted and denied and the trial commenced on May 10, 1971. Prior to trial on May 10, 1971, defendant orally moved for dismissal of the charges for want of prosecution which was denied. Such order as well as the preceding conduct detailed above is the basis for defendant's claim that he was denied a speedy trial. On and after April, 1969, Arthur Young, as special prosecutor and Walter Sebo, public defender, acted as counsel for the State and defendant respectively and have continued in such capacities on this appeal.

It is undisputed that prior to trial defendant was not incarcerated,

was free on bail during the entire period prior to his trial and that no demand for trial was ever made by defendant as provided in sec. 103—5, ch. 38, Ill. Rev. Stat. 1963, (present sec. 103—5 (b), Ill. Rev. Stat. 1971). It is equally undisputed that during the period April 1, 1968, to April 5, 1971, nothing transpired except the substitution of attorneys for defendant and the appointment of a special prosecutor, occurring in April, 1969. Nor is it disputed that over three years nine months elapsed between the commission of the offense (August 5, 1967) and commencement of trial (May 10, 1971).

On this appeal defendant does not claim that his trial was precluded by sec. 103—5, ch. 38, Ill. Rev. Stat. 1963, because admittedly he made no demand for trial as required by said section. Rather, in reliance upon *People v. Love*, 39 Ill.2d 436, 235 N.E.2d 819; *People v. Henry*, 47 Ill.3d 312, 265 N.E.2d 876; and *People v. Brown*, 17 Ill.App.2d 97, 253 N.E.2d 140, defendant argues he was denied a speedy trial in violation of the constitutional requirements even though he may not have been within the precise terms of the statutory implementation of such constitutional right. In this respect the aforecited authorities do announce and discuss the constitutional speedy trial provisions in relation to the statutory implementation and conclude the constitutional provision is not completely implemented by the statutory provisions and theorize that a person accused of a criminal offense may be deprived of his constitutional right to a prompt trial even though he may not come within the terms of the implementing statute. Conceding that the statute does constitute a legislative declaration implementing the constitutional provision, the aforementioned authorities observe that such statutory implementation does not exhaust or completely circumscribe the speedy trial provisions of the Illinois Constitution or the Federal Constitution.

In the *Love* and *Henry* cases, *supra*, as well as the recent case of *Barker v. Wingo*, (U.S.), 33 L.Ed.2d 101, the courts have indicated that failure to bring a defendant to trial for some lengthy unspecified period of time may constitute presumptive prejudice requiring discharge of the defendant. However no case has been called to our attention or has been cited in the principal authorities in which such rule has been applied. Consequently we are not prepared to say the period of delay between arrest and trial in the case at bar creates a presumption of prejudice. The extended period of purposeless delay would appear to approach the limit of delay beyond which prejudice would be presumed as a matter of law.

■■ Even though a demand for trial by defendant out on bail may not be essential in determining whether defendant has been denied his right of a speedy trial defendant's conduct is relevant to the question of as-

sertion or waiver of his constitutional right. (*Barker v. Wingo, supra.*) Prejudice either apparent or actual as distinguished from merely potential caused by unreasonable delay is probably the most important factor in determining whether the constitutional provision has been violated. In the case at bar it is our conclusion that the record has shown no prejudice and consequently we conclude defendant's constitutional rights have not been denied.

As observed in *Barker v. Wingo, supra*, there is both a societal right and duty to provide for prompt trials regardless of the wishes or conduct of the defendant lest the goals of the criminal procedure be thwarted. This admonition would seem of particular application to the case at bar where a sentence of from 1 to 3 years in the penitentiary is imposed nearly 4 years after the offense occurred. The State offers no reason or excuse for the delay except an illusion to defendant's motion for extension of time to plead filed on February 14, 1968, suggesting that because said motion was pending and had not been acted on at time of trial some 3 years later this constituted delay attributable to the defendant. Such claim is in our judgment without merit since the motion was never granted, the cause was never continued pursuant to the motion and after the defendant filed his amendment to his dismissal motion on February 28, 1968, such motion could have had no legal effect if indeed the filing itself had any legal effect. Even though defendant failed to object to the delay we strongly doubt that the purposeless delay furthered any appropriate goal of the criminal process and in our judgment such delay ought not to have occurred.

After considering defendant's arguments concerning insufficiency of the evidence to prove him guilty beyond a reasonable doubt and the alleged prejudicial trial errors it is our conclusion that no reversible error was committed.

With respect to defendant's contention that the evidence is insufficient to support the jury's verdict that he was guilty of reckless homicide beyond a reasonable doubt a summary of the evidence is appropriate.

At 9 P.M. on the evening in question the decedent left his employment at the Davis Store in the village of St. David. From there he drove approximately one and one-half blocks in the village of St. David to an ice cream social, where he stayed less than five minutes and was last seen heading for Lewistown to attend a dance, driving out of the village toward Route 100 with his lights on his motorcycle working. Route 100 borders the village of St. David on the south side and the accident took place about four blocks from the ice cream social.

There were no eye witnesses to the incident. The occupants of the vehicle approaching the scene from the opposite direction first saw de-

fendant's vehicle as it was spinning, sparks flying on the highway ending up in the ditch on their side of the road. After passing defendant's disabled car the vehicle approaching from the opposite direction stopped along the highway and the occupants went back to offer assistance. The occupants of the car together with two neighbors searched the area, could not find the driver of the car, but did after some fifteen minutes or so, discover on the other side of the road the injured boy and the wrecked motorcycle.

There was testimony that the automobile and motorcycle had collided, there being damage to the right front headlight, fender and rocker panel of the car extending back approximately ten feet with the additional evidence that the rocker panel was imbedded in a portion of the motorcycle. A State Police officer testified that the collision took place in the lane in which defendant's vehicle was traveling.

■■ Additionally the State presented evidence of defendant's activities from approximately 3 P.M. in the afternoon until the time of the incident at 9 P.M. indicating that a substantial amount of the time defendant was in taverns drinking. The defendant concedes there is evidence from which it may be inferred that he was under the influence of intoxicating beverages at the time of the incident and that his intoxication could have been substantial. Nevertheless the defendant insists that intoxication alone is not the gist of the charge and the evidence fails to show a necessary causal relationship between the intoxication and the death of the decedent. (*People v. Potter*, 5 Ill.2d 365, 125 N.E.2d 510.) We do not agree with such contention and believe there is ample evidence that defendant's voluntary intoxication not only existed in fact but also could have and did cause him to operate his car in a reckless manner as defined in the offense. (*People v. Schneider*, 360 Ill. 43, 195 N.E. 430.) Although defendant in his testimony claimed not to have seen the motorcycle suggesting the performance of his car was due to a blown out tire, there is ample evidence from which it may be inferred that defendant did see or should have seen the motorcycle and failed to respond appropriately. *People v. Simmons*, 407 Ill. 417, 95 N.E.2d 477.

■■ Somewhat related to the foregoing argument is defendant's assignment of error relating to the giving of three instructions by the State objected to by defendant. The first provided, "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that: No person who is under the influence of intoxicating liquor may drive any vehicle within this State. If you decided that the Defendant violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the Defendant was reckless

before and at the time of the occurrence". We find no error in the giving of this instruction even though as defendant suggests, it does call attention to intoxication and the evidence relating thereto. Nevertheless within the context of the evidence and the other instructions it does no more than permit the jury to consider the serious effect of driving while intoxicated on the ultimate conduct charge, recklessness. (*People v. Simmons*, 407 Ill. 417, 95 N.E.2d 477.) Nor do we find any objection to the instruction regarding the definition of reckless conduct since it is substantially in accord with definitions previously stated in prior opinions. *People v. Baier*, 54 Ill.App.2d 74, 203 N.E.2d 633.

██ Defendant also complains about the giving of the State's instruction defining circumstantial evidence in accord with IPI Criminal 3.02. The objection urged is the failure of the instruction to include and the failure of the court to require the second paragraph or bracketed portion of the instruction providing, "(You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence.)". According to the Committee Comments referring to this instruction and the second paragraph, "The second paragraph should be given only when the proof of guilty is entirely circumstantial". In the context of the case at bar it appears to us that the testimony of the occupants of the car approaching the scene from the opposite direction may be regarded as direct evidence since it does relate to the observed activities of the defendant's motor vehicle at or near the scene of the mishap, contemporaneous with occurrence of the mishap itself. That the witnesses may not have seen the actual collision or contact between motor vehicle and motorcycle does not prevent their testimony from being considered direct evidence.

 Citing such cases as *People v. Castree*, 311 Ill. 392, 143 N.E.2d 112 and *People v. Crump*, 5 Ill.2d 251, 125 N.E.2d 615, defendant contends that the trial court abused its discretion in permitting the testimony of five rebuttal witnesses contending that the testimony of the witnesses was not proper rebuttal testimony and further that permitting the witnesses to testify deprived defendant of the benefit of the order excluding witnesses during trial. As claimed by defendant the testimony of the rebuttal witnesses was directed at three points in the case. First, that the lights on the motorcycle of the decedent were operating when decedent was last seen; second, the flight of the defendant; and third, the intoxication of the defendant. As indicated in the authorities cited by defendant the fact that rebuttal testimony could have at least in part been presented by the State in its case in chief does not thereby render such rebuttal testimony inadmissible. In reviewing the testimony complained of we agree that some of the testimony was more or less cumulative to the

State's case in chief but also some of the testimony tended to rebut or cast doubt upon defendant's account of his conduct prior to the mishap and the circumstances surrounding the incident itself. So far as permitting the rebuttal witnesses to testify where they had been present in the courtroom and where there had been an order entered excluding witnesses it appears that as often happens, the rebuttal witnesses had testified earlier and had stayed in the courtroom after their testimony. Permitting such witnesses to testify in rebuttal is within the discretion of the court and is in accord with rather than contrary to the reasons for excluding witnesses in the first place. It is our conclusion that the trial court did not err in permitting the rebuttal witnesses to testify.

■■ Defendant next complains that he was deprived of a fair trial by the failure of the State to transcribe testimony of all of the witnesses before the Grand Jury. In this connection defendant recognizes that *People v. Derengowski,* 67 Ill.App.2d 66, 213 N.E.2d 618, has held that transcription of the testimony of witnesses before the Grand Jury is not required. However defendant has directed our attention to the peculiar circumstance that in the case at bar the only testimony before the Grand Jury transcribed at the request of the State was the testimony of defendant's wife. Since to date constitutional mandate has not been deemed to require transcribing testimony before the Grand Jury and since the legislature has not seen fit to so require or to so provide we conclude that the failure to transcribe the testimony of all the witnesses can not be deemed prejudicial error. The practice does not commend itself as affording evenhanded fairness but until and unless transcription becomes mandatory there is discretion in the State in this regard.

The next assignment of error which we shall consider is that the court should have declared a mistrial or granted him a new trial because prejudicial matters were erroneously introduced into the trial. The complained of matters stem principally from the State's cross examination of the defendant and a related reference in the final argument of the prosecuting attorney.

In cross-examining the defendant the prosecuting attorney asked the following questions: "Q. You have testified that you had an accident in July of 1967 with Mrs. Dietz. A. Yes, sir. Q. Did you leave the scene of the accident at that time, sir?" Objection was made and sustained. The State then proceeded to ask the next question. "Q. At the time you had an accident with Mrs. Dietz, did you have a driver's license then?" The objection was sustained but not before the defendant gave his answer. At the first opportunity defendant made his motion for a mistrial, which motion was denied. The questions of course were directed at another offense occurring at another time. During final argument the prosecuting

attorney said, "It is obvious from the defendant's own testimony that revoking the driver's license of this defendant isn't punishment for him."

■■ A defendant's guilt must be established by legal and competent evidence, uninfluenced by bias or prejudice raised by irrelevant evidence. (*People v. Bernette*, 30 Ill.2d 359, 197 N.E.2d 436.) As a general rule evidence of other crimes is considered to be irrelevant and prejudicial. *People v. Novotny*, 305 Ill. 549, 137 N.E. 394.

■■ There is a well recognized exception to the rule precluding evidence of collateral offenses. As observed in *People v. Smith*, 3 Ill.App.3d 958, 279 N.E.2d 512, the only case relating to such exception cited by the State the court observed, "Evidence of other crimes may be admitted to prove knowledge, design, plan, identification, to negate defenses of inadvertence, to show an absence of good faith, or to evidence a consciousness of guilt". In the *Smith* case the court held that the intimidation of a witness by the defendant was within the exception. However the State has failed to suggest how the questions and answers they were designed to elicit come within the foregoing exception and we agree with the trial court that the collateral facts which the questions sought to disclose to the jury were irrelevant.

■■ In denying defendant's motion for a new trial the judge was disturbed about this issue but concluded that because the objections to the questions had been sustained and the jury instructed to disregard them he concluded that he had done all that he could and should have done under the circumstances. We agree with this conclusion and believe that whatever effect the questions might have had was minimal and did not prejudice defendant's rights. Even though we believe the questions were erroneous absent prejudice we believe no reversible error was committed.

■■ Lastly defendant argues that his sentence from 1 to 3 years in the penitentiary is excessive. Granted that we have statutory authority to consider and reduce under appropriate circumstances sentences imposed by the trial court we do so reluctantly and only where the sentence imposed represents a gross departure from general standards. In the instant case the sentence imposed was near the minimum incarceration if the trial court believed that incarceration was necessary. In denying defendant's request for probation and imposing the sentence which it did we believe the trial court acted within its discretion.

Finding no error in the judgment of the Circuit Court of Fulton County the judgment is affirmed.

Judgment affirmed.

ALLOY and DIXON, JJ., concur.