The People of the State of Illinois, Plaintiff-Appellee, *v.* Michael L. Rege, Defendant-Appellant.

(No. 74-140; 

Fifth District—July 11, 1975.

*Rehearing denied August 6, 1975.*

Pritzker and Glass, Ltd., of Chicago (Michael L. Pritzker, Marvin Jay Glass, and David M. Schneider, of counsel), for appellant.

Kelly D. Long, State's Attorney, of Hillsboro (John C. Hanafin, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

In a bench trial in the Circuit Court of Montgomery County defendant was convicted of possession of cannabis. (Ill. Rev. Stat. 1973, ch. 56½, § 704(e).) He was sentenced to a prison term of 1 to 3 years. He contends in this appeal (1) that the indictment failed to charge him with an offense, (2) that the evidence was insufficient to prove the material possessed was cannabis as defined by statute, (3) that he was deprived of his constitutional right to assistance of counsel by ineffective and incompetent representation at trial, and (4) that the trial court abused its discretion in sentencing him to 1-to-3-years' imprisonment.

The statute under which defendant was convicted reads in pertinent part:

"It is unlawful for any person knowingly to possess cannabis. Any person who violates this section with respect to:

 \* \* \*

(e) more than 500 grams of any substance containing cannabis is guilty of a Class 3 felony." Ill. Rev. Stat. 1973, ch. 56½, § 704(e). The statutory definition of "cannabis" as used above is as follows:

"'Cannabis' includes marijuana, hashish and other substances which are identified as including any parts of the plant Cannabis Sativa, whether growing or not; the seeds thereof, the resin extracted from any part of such plant; and any compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin, including tetrahydrocannabinol (THC) and all other cannabinol derivatives, \* \* \* but shall not include the mature stalks of such plant \* \* \*." Ill. Rev. Stat. 1973, ch. 56½, § 703(a).

■■ Defendant first argues that the indictment charging him with the offense of knowingly and unlawfully possessing "more than five hundred (500) grams of a substance containing Cannabis otherwise than as authorized in the Cannabis Control Act in violation of Chapter 56½, Paragraph 704(e), Illinois Revised Statutes" is insufficient for failure to specify that the substance possessed contained cannabis sativa. Defendant contends that since the statute defines cannabis in terms of cannabis sativa, in order to charge illegal possession of cannabis, it was incumbent upon the State to allege possession of a substance containing cannabis sativa specifically. Defendant advances a closely related argument that since there is evidence of more than one species of cannabis, and since the statute under which he was convicted speaks only in terms of cannabis sativa, it was necessary for the State to prove that the substance in question was cannabis sativa. He points out that since the State's expert testified only that the substance was "cannabis" he has not been shown to have violated the statute. Since these two arguments present the same basic question, they shall be treated together. While these contentions were not raised below we shall consider them as though they were because of defendant's claim of incompetent representation for failure to raise these questions at the trial.

Only very recently, this same court was presented with this exact issue in *People v. Binkley*, 25 Ill.App.2d 27, 322 N.E.2d 514 (1975), which we abruptly dismissed as void of merit. Since there remains some question we have decided to discuss the matter more fully.

There is a great divergence of opinion among scientists, legislatures and courts alike as to the taxonomy of the cannabis plant. The controversy involves the determination of the genus cannabis as either monotypic

or polytypic, that is, whether there is more than one species of cannabis. The keystone of defendant's argument is that it is a scientific fact that more than one species of cannabis exists, that the legislature intended to criminalize only one species known as cannabis sativa, and therefore, the State must charge in the indictment and prove at the trial that the substance possessed was cannabis sativa specifically, not merely "cannabis."

In support of this position, defendant refers us to a technical article appearing in the Botanical Museum Leaflets, Harvard University, vol. 28, no. 9, at 337-387 (1974), entitled *Cannabis: An Example of Taxonomic Neglect*, by Richard Schultes *et al*. At page 340 of this article the authors admit that the genus "has been and still is generally considered to be monotypic," in spite of the fact that their personal opinion as well as that of many well-known botanists is that the genus is polytypic. The authors state that there has been a shameful lack of research performed on the genus cannabis, the result of course being that genuine issues remain concerning the taxonomic status of the plant.

■■ In determining the meaning of the statute in the instant case, it is helpful to note how the Federal courts have resolved very similar problems. For example, in *United States v. Rothberg*, 351 F.Supp. 1115 (E.D.N.Y. 1972), *aff'd*, 480 F.2d 534 (2d Cir. 1973), *cert. denied*, 414 U.S. 856, the court determined that the term "marijuana" defined in 26 U.S.C. § 4761 (since repealed) as "* * * all parts of the plant Cannabis sativa L * * *" included cannabis indica as well. There the defendant sought to reverse a conviction upon the theory that the cannabis actually possessed was cannabis indica and thus fell outside the legislative proscription. In examining the legislative history of the statute, the court relied upon a statement made by the Commissioner of Narcotics to the effect that "Cannabis indica was the same drug as Cannabis sativa but was known in different countries by different geographical names 'in accordance with the geographical origin of the particular plant.'" (351 F.Supp. 1115, 1117.) In refusing the polytypic concept of cannabis, and in reviewing the hearings before the House of Representatives, the court concluded that at the time of the enactment of the statute "Congress not only meant to but actually did include Cannabis indica in using the term Cannabis sativa L.", 351 F.Supp. 1115, 1117-1118.) Courts in other circuits have reached the same result in construing the statute. *United States v. Moore*, 330 F.Supp. 684, 686 (E.D. Pa. 1970), *aff'd*, 446 F.2d 448 (3d Cir. 1971), *cert. denied*, 406 U.S. 909; *United States v. Gaines*, 489 F.2d 690 (5th Cir. 1974).

In *United States v. Walton*, 514 F.2d 205 (1975), the United States Court of Appeals of the District of Columbia Circuit was confronted with this same argument in relation to 21 U.S.C. 802 (15). That statute provides that "[t]he term 'marijuana' means all parts of the plant Cannabis

sativa L., whether growing or not * * *." In rejecting the contention that Congress meant to outlaw the distribution of only one species of marijuana, the court assumed that more than one species of marijuana exists, but concluded that the congressional bar extended to all forms of marijuana that have an intoxicating effect. Since all the species of marijuana possess the toxic agent "tetrahydrocannabinol" (THC) which produces the hallucinogenic or euphoric effects, it was Congress' intent to outlaw all forms of marijuana. The court reasoned that a contrary interpretation would be not only illogical, but would raise substantial equal protection questions. This rationale was recently accepted by the Tenth Circuit in *United States v. Spann* (10th Cir. 1975), — F.2d —) as dispositive of the same question under the same statute.

■■■ While the ultimate determination of the taxonomy of the genus cannabis is no doubt relevant for the purpose of resolving difficulties in legal descriptions, we deem the real issue as not whether cannabis is monotypic or polytypic but what the Illinois legislature intended when enacting these statutes. Illinois statutes on the subject have spoken exclusively in terms of cannabis sativa since 1935 when referring to the genus and species specifically prohibited. Yet we take note from the scientific article cited herein and the testimony of various experts throughout the United States that the widespread recognition of the polytypic nature of cannabis is only of very recent origin, if in fact it may be considered widespread at present. This leads us to the inescapable conclusion that the legislature adopted "Cannabis Sativa" believing it to be the term that botanists used to embrace all forms of cannabis. And since it is a scientifically accepted fact that all known forms of the genus cannabis possess the toxic element tetrahydrocannabinol (THC) which produces the hallucinogenic or euphoric state, it seems more than illogical that the legislature intended to outlaw the possession of one while ignoring the possession of another. This latter point takes on even greater significance when one considers the clear legislative intent to ban "* * * tetrahydrocannabinol (THC) and all other cannabinol derivatives * * *" (Ill. Rev. Stat. 1973, ch. 56½, § 703(a)). To hold otherwise on this question would put the legislature to the task of redefining the substance each time further taxonomic research definitely established the existence of other species of the genus cannabis. We therefore conclude that the indictment in the instant case was not insufficient for failure to charge the possession of "Cannabis Sativa" specifically. On the same basis we also hold that the evidence was sufficient to prove the defendant guilty beyond a reasonable doubt in spite of the failure to prove that the substance possessed was cannabis sativa in particular.

■■ Aside from the above discussion, the indictment in this case is nonetheless sufficient for other reasons. The modern view of indictment suf-

ficiency is that an indictment will be upheld if it states specifically elements of the offense with sufficient particularity to apprise the accused of the crime charged, to enable him to prepare his defense, and to permit conviction or acquittal to be pleaded in bar of subsequent prosecution for the same offense. (*People v. Grieco*, 44 Ill.2d 407, 255 N.E.2d 897 (1970), *cert. denied*, 400 U.S. 825.) We find that the indictment satisfies these criteria.

■■ Defendant also asks us to reverse his conviction because he was incompetently represented below. In support of this contention, he makes specific reference to his counsel's lack of understanding of the plea bargaining process, his admission of appellant's guilt to the trial judge before trial, his failure to cross examine the State's expert witness about the types of cannabis, his failure to challenge the indictment, and his failure to preserve errors. We have already held that the indictment was sufficient and that the expert testimony was adequate to support defendant's conviction. We have reviewed the record as a whole and have concluded that defendant's argument is without merit. "In order to warrant a reversal because of incompetency of counsel the defendant must establish actual incompetency as reflected by the representation and substantial prejudice resulting therefrom." (*People v. Witherspoon*, 55 Ill.2d 18, 21, 302 N.E.2d 3 (1973); *People v. Hrebenar*, 48 Ill.2d 100, 268 N.E.2d 869 (1971).) We find no such prejudice as would warrant a reversal here. Considering the overwhelming and undisputed evidence of defendant's guilt, none of the alleged deficiencies in representation could have affected the outcome of the trial.

Defendant finally contends that the trial court failed to exercise sound judicial discretion in denying him probation and sentencing him to 1 to 3 years in the State penitentiary.

■ In *People v. Rednour*, 24 Ill.App.3d 1072, 1077, 322 N.E.2d 492 (1974), the court said, "* * * a reviewing court is no longer precluded from reducing a sentence of imprisonment to a sentence of probation * * * this power should be used sparingly and only where, after close examination and scrutiny, it is apparent that the trial court abused its discretion in denying the defendant's request for probation." At the time of the offense, defendant Rege was 22 years old and engaged to be married. He was apparently very successful in his chosen profession, having been named salesman of the year by his employer. He had no prior record. He was arrested without incident and in no way did he manifest any inclination toward violence. Defendant's subsequent marriage and the testimony of his father-in-law at the post-trial hearing indicate good family relations. Finally, the probation officer's report was favorable to defendant, describing him as capable of doing well on probation.

■■ In *People v. Haynes*, 5 Ill.App.3d 621, 283 N.E.2d 703 (1972), this court identified several factors to be used in determining the severity of the sentence and the likelihood of rehabilitation, including youth, lack of violence, good family relations, steady employment, and previous criminal record. It is obvious that defendant satisfies these criteria in all respects. Incarceration of 1 or more years will deprive him and society of his gainful employment and the support of his family; it will only complicate his rehabilitation by jeopardizing the possibility of the continuance of his usefulness to himself, his family, and society in general. Accordingly, we feel that the interest of the defendant and society would be best served by probationary supervision.

For the foregoing reasons, the judgment of the Circuit Court of Montgomery County is affirmed as to defendant's guilt and reversed as to its denial of granting defendant probation. The cause is remanded with directions to vacate the sentence and to grant defendant probation under such terms and conditions as the trial court shall determine.

Judgment affirmed in part, reversed in part and remanded.

G. MORAN and KARNS, JJ., concur.