THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALBERT HOROBECKI, Defendant-Appellant.

First District (5th Division)    No. 76-975

Opinion filed April 7, 1977.—Supplemental opinion filed on denial of rehearing May 27, 1977.

James Geis and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Jeffrey C. Pattee, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was found guilty of criminal damage to property and sentenced to serve 60 days in the House of Corrections. On appeal, he contends that proof of guilt beyond a reasonable doubt was lacking and that his sentence was improperly imposed. Codefendants Joseph Aleman and Raymond McGann, who were tried with defendant and also found guilty, are not parties to this appeal.

On April 19, 1976, at approximately 12:30 a.m., Maciej Kocur was sitting in the front room of his apartment watching television when one of the two windows in the room was shattered. He went to the unbroken window and observed defendant, with codefendants Aleman and McGann, standing across the street at a distance of approximately 30 feet. He saw all three of them throw rocks in the direction of his windows, some of which broke his windows and landed in his apartment. The light provided by street lamps allowed Kocur to clearly see them throw the stones. They then drove away in an automobile, and he reported the incident to the police.

Approximately one hour later, Kocur was in the front room of the apartment picking up the shattered window glass when he looked out the window and saw the same three men approaching with bricks in their hands. The bricks were thrown through a bedroom window, where his mother and daughters were sleeping. The men stood at a distance of two to six feet from Kocur as they threw the bricks through the window. The police were again notified.

Officer Sulki testified that at approximately 1 a.m. on April 20, 1976, he was arresting Alemàn and McGann along with other individuals for disorderly conduct for an unrelated incident, and he was approached by Kocur who told him that Aleman and McGann had broken several of the windows in his home on the previous night. Later that day, Kocur saw

defendant and notified the police, who arrested him. Thereafter, Kocur signed complaints concerning the window breaking incidents. During the cross-examination, Officer Sulki stated that he had seen the three men in the neighborhood on previous occasions and had once preferred criminal charges against Aleman.

Concerning the damage to his property, Kocur testified that eight panes of two windows had been shattered, which he repaired at a cost of $64. Aleman's father testified that he saw only one broken window when he passed the Kocur residence on the morning following the occurrence. Edward Farrer, a friend of Aleman and McGann, testified that he had seen only one broken window after the incident.

Defendant's mother testified that she, defendant and her sister-in-law were together during the evening of April 18 and on April 19. On the evening of April 18, at approximately 7 p.m., defendant and the two women left their home to purchase fish and chips. After making the purchase, they went for a long automobile ride, returning home about 1 or 1:30 a.m., after which they all watched television for a short period of time before retiring. She further testified that defendant never left home at any time on April 19.

Defendant testified that on the evening of April 18, he and his mother went to a fish place. After driving around for "a little while," they went home and he watched television until 3:30 or 4 a.m.

Aleman testified that he had not broken any of Kocur's windows but had been in court on prior occasions on charges brought by Kocur. He admitted that he had been in the vicinity of Kocur's building earlier in the evening but went home around 10:45 p.m., after driving his girl friend to her home. McGann testified that he did not break any windows in the building; that he had spent the evening with a girl named Angie and went home around 10:30 p.m.

During the presentencing hearing, McGann—after stating that he had lied in his earlier testimony—testified that he had broken all of Kocur's windows and "would like to take full responsibility for everything."

In aggravation, the State pointed out that defendant had been convicted of burglary in 1975 and was still on probation at the time of the offense in question. Defendant's probation officer testified he was placed on probation in December of 1975 and was obligated to report once every month but did not do so until May 14, 1976, which was after his arrest for breaking the windows. The trial court then sentenced defendant to 60 days in the House of Corrections.

OPINION

■■ Defendant contends that he was not proved guilty beyond a reasonable doubt. It is well settled in Illinois that the testimony of a single

witness when positive and credible is sufficient to support a conviction, although contradicted by defendant. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Miller* (1971), 2 Ill. App. 3d 206, 276 N.E.2d 395.) The testimony of an identification witness is strengthened to the extent of any prior acquaintance with defendant. (*People v. Lumpkin* (1975), 28 Ill. App. 3d 710, 329 N.E.2d 262.) While unimpeached testimony of an alibi may not be disregarded (*People v. Hister* (1974), 20 Ill. App. 3d 933, 314 N.E.2d 562, *aff'd* (1975), 60 Ill. 2d 567, 328 N.E.2d 531), the trier of fact is under no obligation to believe alibi testimony even if given by a greater number of witnesses (*People v. Jackson* (1973), 54 Ill. 2d 143, 295 N.E.2d 462). A natural interest in defendant's well-being may affect the weight given to an alibi witness's testimony. (*People v. Simmons* (1950), 407 Ill. 417, 95 N.E.2d 477.) Witnesses who recant their testimony after trial have been regarded as very unreliable. (*People v. Marquis* (1931), 344 Ill. 261, 176 N.E. 314.) While ordinarily judicial confessions are accorded high probative value, a confession is not conclusive of every statement made therein and must be weighed in the same manner as other evidence. (*People v. Uselding* (1967), 85 Ill. App. 2d 323, 230 N.E.2d 1.) In a bench trial, the trial court is the trier of fact, and its determination as to the credibility of all the witnesses and the weight to be given their testimony will be disturbed on review only where the evidence is so unsatisfactory that it leaves a reasonable doubt of defendant's guilt. *People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378.

Here, Kocur had two opportunities, under good lighting conditions, to observe the men whom he had seen around the neighborhood on previous occasions. He identified all three, including defendant, to the police within 24 to 48 hours after the occurrence. Each of the three men testified that they knew Kocur by sight, which confirmed in part his testimony that he knew them prior to the occurrence. While there were three common elements to the alibi given by defendant and his mother, *i.e.*, purchasing fish, taking a drive, and watching television, their testimony as to the time periods involved was vague and can even be viewed as contradictory. Furthermore, it should be noted that McGann, who recanted his testimony and exculpated defendant after the convictions had been rendered, was the only defendant without a prior criminal record. Considering all the evidence, it was not unreasonable for the trial court to have found McGann's statement not to be credible.

■■ We believe the posture of this case to be on all fours with *People v. Horton* (1975), 28 Ill. App. 3d 174, 328 N.E.2d 72 (abstract), which held that the confession of another which exculpates the accused, coupled with the testimony of an alibi, did not raise a reasonable doubt of guilt in the face of positive and credible identification testimony. It appears that defendant had been identified shortly after the occurrence as one of those

who had committed an armed robbery, but he and his girl friend had testified to an alibi and his brother testified that he, and not defendant, had committed the crime. It was reasoned, in *Horton*, that the trial court was under no obligation to believe the alibi testimony over positive identification of defendant and that the trial court's determination as to the credibility of the witnesses and the weight to be given their testimony, including the confession of defendant's brother, would not be disturbed on review where the evidence was not so unsatisfactory as to raise a reasonable doubt of defendant's guilt.

We believe that the *Horton* reasoning is equally applicable to the case at bar. McGann, who had already been convicted of the offense and who had no previous criminal record, could have confessed out of a natural concern for his companion—who was already on probation, rather than from a strong sense of his own guilt. (*Horton; Uselding.*) Moreover, the testimony of defendant and his mother appears to be contradictory as to the time periods involved, while Kocur's identification of defendant was positive and remained so throughout the cross-examination.

Further, without supporting citations, defendant argues that the prior confrontations between him and Kocur were of a criminal nature and that the testimony of Kocur concerning them was sufficient to show bias on his part and a resulting lack of credibility. We have reviewed the challenged testimony and do not find this to be the case.

■■ In the light of the above, we are of the opinion that the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

It is also contended that defendant's sentence was improperly imposed because the trial court misapprehended its authority to sentence a defendant already on probation to another probationary term. He posits that this misapprehension of the law, coupled with the failure to invite defendant to make a statement on his own behalf, requires the sentence to be vacated and the cause remanded for a new sentencing hearing. We disagree.

> "The scope of review from a denial of an application for probation is limited to the extent of determining whether the trial court did, in fact, exercise its discretion or whether it abused that discretion by acting in an arbitrary manner. [Citation.]" (*People v. Bolyard* (1975), 61 Ill. 2d 583, 586, 338 N.E.2d 168, 169.)

During the presentencing hearing, the trial court queried:

> "Can he be put on probation?"

The question was not answered by either attorney, and defendant then called the probation officer, who testified as set forth above—after which the court stated:

> "I can't give probation on top of probation. I would like to keep control and keep him away from this man."

■■ The record discloses that when the trial court denied the request for probation, he had heard trial testimony that defendant had returned twice within a short period of time to commit the same offense. He had been informed that defendant was on felony probation at the time of the offenses and that he had violated the terms of his probation. Failing to grant probation under these circumstances cannot be said to be an abuse of discretion. Furthermore, a review of the entire record leaves us with the belief that the remark of the court as to whether defendant could be put on probation again questioned the appropriateness of another probation term, rather than its authority to grant such a sentence.

■■ While it is true that the trial court did not invite defendant to make a statement on his own behalf, as required by section 5—4—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—4—1(a)(5)), such an omission is a technical error which does not require the vacation of the sentence where, as here, the court entertained the argument of defense counsel, heard the testimony of the witness proffered by the defense, and listened when each of the other defendants expressed an interest in speaking to the court. *People v. Spiler* (1975), 28 Ill. App. 3d 178, 328 N.E.2d 201.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In his petition for rehearing, defendant states that he failed to call our attention to the recent case of *People v. Rege* (1976), 64 Ill. 2d 473, 356 N.E.2d 537, which he says is directly in point and conflicts with our opinion.

In *Rege,* defendant was found guilty of the possession of more than 500 grams of a substance containing cannabis, in violation of the Cannabis Control Act (the Act). A request for probation was denied, and a sentence of one to three years was imposed. It appears that during the presentence hearing, the prosecutor erroneously stated on two occasions that the offense was the most serious one under the Act, where, in fact, it was only the most serious possession offense. Thereafter, the trial court in denying probation commented on the quantity of cannabis involved and the seriousness of the offense. The appellate court (*People v. Rege* (1975), 30 Ill. App. 3d 127, 332 N.E.2d 154) concluded that the interests of defendant

and society would best be served by probationary supervision, rather than imprisonment, and on this basis the sentence was vacated and the cause remanded with directions to grant probation.

After first affirming the conviction, our supreme court held in *Rege* that Supreme Court Rule 615 does not grant authority to a reviewing court to reduce a sentence of imprisonment to probation, citing *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168. Then, it considered the import of the prosecutor's erroneous statement in the light of the trial court's comments, and stated:

> "The State's Attorney undoubtedly intended his reference to mean 'the most serious possession offenses.' But that is not what he said. Perhaps, or even probably, they were understood by the judge as they were intended. But we cannot be certain. And because of that lack of certainty, coupled with the fact that the judge clearly considered the question whether probation should be granted a difficult decision and his expressed reason or his decision was the 'seriousness of the offense,' we have concluded to remand for such further consideration as the trial judge believes appropriate." 64 Ill. 2d 473, 484, 356 N.E.2d 537, 542.

It was also stated in *Rege* that appellate review of the denial of probation is limited to determining whether the trial court did in fact exercise its discretion or whether it abused that discretion by acting in an arbitrary manner. See also *People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 301 N.E.2d 300.

■■ Thus, we believe the rule to be that when a trial court makes a comment which may indicate an arbitrary denial of probation and where a review of the record does not clarify the ambiguity, a reviewing court should remand for resentencing. However, where as here, such a review clarifies any initial ambiguity and establishes that the trial court did not act arbitrarily but, rather, exercised its discretion properly in the denial of probation, remandment is not required.

For the reasons stated, the petition for rehearing is denied.

LORENZ and WILSON, JJ., concur.