THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.* CHARLES JONES, Petitioner-Appellant.

(No. 60256; ▮)

First District (1st Division)—November 3, 1975.

SIMON, J., dissenting.

Paul Bradley and Martin Carlson, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Frank J. Parkerson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The petitioner, Charles Jones, was found guilty of the murder of George Johnson after a bench trial and sentenced to a term of 20 to 40 years. The judgment was affirmed on direct appeal. (*People v. Jones*, 121 Ill.App.2d 268, 257 N.E.2d 514.) His post-conviction petition was dismissed without an evidentiary hearing. The sole issue in the appeal of that dismissal is whether he was denied due process by the failure of the State to apprise him of the grand jury testimony of a witness who was not called to testify at the trial.

■■ At the outset, we must reject the State's assertion that the argument now advanced is waived since it was not raised by direct appeal. The waiver rule does not apply where the allegations in a post-conviction petition can be proved only by facts outside the record. (*People v. Dennis*, 14 Ill.App.3d 493, 302 N.E.2d 651.) That Dean gave favorable testimony before the grand jury and that the State did not disclose his testimony are not disclosed by the record on appeal.

Before trial, the defendant filed a motion requesting a list of witnesses and copies of any written or oral statements made by the State's witnesses. In response, the State submitted a list of witnesses which included the name and address of Johnny Dean. Dean's name also appeared on the back of the indictment.

At the trial, Cleophas Martin, a cab driver, testified that at 4 a.m. on April 26, 1968, he saw two men apparently arguing over money.

They looked as if they were going to fight, and one of them pulled out a gun and shot the other. The man shot was facing Martin, who did not see anything in the man's hands. The man who fired the shot drove off in an automobile.

Robert Johnson testified that he was at a tavern with his brother, George, two other men and a girl. As they left, Tommy Houston, the defendant's cousin, approached Johnny Dean, pointed a gun at him and demanded money that he was owed. George Johnson gave some money to Houston, who fired some shots and fled. Robert Johnson chased Houston, emptying a pistol at him during the chase. He could not catch Houston and returned. As he approached the defendant's automobile, he saw his brother and the defendant arguing. Then he heard a shot and saw his brother fall to the ground.

The defendant testified that as he came out of a tavern, Johnny Dean hit him, shouting to George and Robert Johnson that the defendant was a cousin of Houston's. As the defendant walked to his car, George Johnson struck him and started to pull out a gun, so the defendant shot him.

Thomas Houston testified for the defense that he met Johnny Dean at the tavern and demanded money that Dean owed. Dean told Houston he would get it from George Johnson. Dean pulled a knife, which Houston took from him. Houston had George Johnson drop the money on the street and back off. Houston picked up the money and ran. Dean attempted to get a gun to shoot him. As Houston ran, the three men chased him, and Robert Johnson was firing shots at him.

Robert Johnson also testified that when he came back after chasing Houston, he saw his brother, George, Johnny Dean, the defendant, and two other people at Dean's car. As he approached, he heard what sounded like " 'Let's fight' or something." He also testified that "they [the defendant and the deceased] were going to hit each other and there was a shot."

To his post-conviction petition the defendant attached a transcript of the grand jury testimony of Robert Johnson and Dean and the affidavit of his trial attorney. Robert Johnson's grand jury testimony was substantially the same as his trial testimony. Dean, who did not testify at the trial but was present in court, testified before the grand jury that when he left the tavern, Tommy Houston was waiting outside with a pistol and "robbed" them; that when Houston picked up the money from the ground, he fired two or three shots in the air. Dean and Robert Johnson tried to catch Houston. When the defendant drove up, Dean called out that the defendant was Houston's cousin and that he could help them get their money back by taking them where Houston was.

George Johnson went to the car where the defendant was. Dean testified: "One word led to another and they got to fighting and I ran across the street. I was talking to one of the boys that was with his cousin. Then this other boy pulled a pistol up and shot George." Later he testified: "I don't know who got the first lick. They started fighting. I got there and grabbed Steve, and Charles Jones shot George."

The affidavit of the defendant's trial attorney is, in part, as follows:

"2. The Assistant State's Attorney complied with an oral and written answer to my Motion for Discovery on July 12, 1968.

3. The answer did not include notice of a favorable statement made at the Cook County Grand Jury on June 7, 1968, by Johnny Dean, who was listed as a State's witness.

4. During the course of the trial, at no time did I receive notice of this statement made by an occurrence witness.

5. The State failed to call Johnny Dean, as a witness, though the trial transcript reflects that he was present in court during the course of the proceedings."

The defendant contends that the State's failure to apprise him of Dean's grand jury testimony denied him due process, relying principally on *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194. But we do not believe that *Brady* is dispositive of the precisely same issue that is before us. In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (373 U.S. at 87.) In *Moore v. Illinois,* 408 U.S. 786, 33 L.Ed.2d 706, 92 S.Ct. 2562, the United States Supreme Court construed *Brady* thus (408 U.S. at 794):

"The heart of the holding in *Brady* is the prosecution's suppression of evidence, *in the face of a defense production request,* where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence. These are the standards by which the prosecution's conduct in *Moore's* case is to be measured." (Emphasis added.)

The State concedes that Dean's testimony that there was a fight, although he did not know who struck the first blow, would have corroborated the defendant's testimony that there was a fight. The State's witnesses had testified that the defendant and the deceased looked like they were going to fight.

██ At the time this case was tried, the State was not required to provide grand jury testimony unless and until the witness testified at trial. (*People v. Johnson*, 31 Ill.2d 602, 203 N.E.2d 399.) The trial attorney understandably did not expressly request production and examination before trial. His affidavit shows that the State answered his motion orally and in writing without providing any grand jury transcripts. The defendant now contends that his request for "statements" embraced grand jury testimony. The defendant obviously did not think so at the time the State answered his discovery motion; nor do we think so now. It has been held that grand jury testimony should be available for inspection by the defendant for the same reason that statements of witnesses are available. (*People v. Davis*, 103 Ill.App.2d 418, 423-424, 244 N.E.2d 381.) But no judge could reasonably be expected to be on notice that a request for "statements" included grand jury testimony. We note that the present discovery rules make an express distinction between "statements" of witnesses (50 Ill.2d R. 412(a)(i), (ii)) and grand jury testimony (50 Ill.2d R. 412(a)(iii)). Since there was no request for grand jury testimony, *Brady* is factually inapposite.

But our conclusion of *Brady's* factual inapplicability is not dispositive of the question. What this case boils down to is the question of whether the State has "suppressed" evidence favorable to the defendant. Suppression necessarily involves knowledge, actual or imputed, on the part of the prosecution of the existence of the favorable evidence. In *Napue v. Illinois*, 360 U.S. 264, 3 L.Ed.2d 1217, 79 S.Ct. 1173, an accomplice witness testified on cross-examination that he had received no promises. The prosecutor trying the case knew this to be false but took no steps to correct it. The Supreme Court held that, although the prosecutor did not elicit the false testimony, his failure to correct it was tantamount to knowing use of perjury. The principle of *Napue* was extended in *Giglio v. United States*, 405 U.S. 150, 31 L.Ed.2d 104, 92 S.Ct. 763, in which, again, an accomplice, who had not been indicted, testified that no one had told him that he would not be prosecuted. DiPaola, the assistant district attorney who presented the case to the grand jury, submitted an affidavit in which he stated that it was agreed with the witness that the witness would not be prosecuted if he testified for the government. The affidavit of Golden, the assistant district attorney who tried the case, showed that before trial he had conferred with DiPaola, who told him the witness had not been granted immunity but that he had not indicted the witness because of his youth and because he "had been overreached by [the defendant]." The United States' attorney's affidavit established that he told the witness and his attorney that he would be prosecuted if he did not testify and that if he did testify he

would be obliged to rely on the "good judgment and conscience of the government" as to whether he would be prosecuted. In ordering a new trial, the Supreme Court said (405 U.S. at 154):

> "*In the circumstances shown by this record*, neither DiPaola's authority nor his failure to inform his superiors or his associates is controlling. Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government. [Citations.] To the extent this places a burden on the large prosecution offices, procedures and regulations can be established to carry that burden and to insure communication of all relevant information on each case to every lawyer who deals with it." (Emphasis added.)

The court, in substance, held that DiPaola was under a duty to disclose his promise to the witness.

A defendant has no constitutional right to the recordation of the testimony of the grand jury witnesses (*People v. Lentz*, 55 Ill.2d 517, 304 N.E.2d 278; *People v. Lobb*, 9 Ill.App.3d 650, 292 N.E.2d 750); nor, if the testimony is recorded, to have it transcribed (*People v. Aughinbaugh*, 36 Ill.2d 320, 324-325, 223 N.E.2d 117). It has long been the practice in Cook County, however, to record grand jury testimony; but the transcription of such testimony had been the exception rather than the rule before *People v. Johnson*, 31 Ill.2d 602, 203 N.E.2d 399. After *Johnson*, the general practice was to require the State, after motion by the defense, to have a witness' grand jury testimony transcribed, if recorded, and available for inspection by the defense when the witness testified. In this regard, the only change made by the discovery rules was to permit pretrial inspection of grand jury testimony of witnesses the State intended to call. Although this case was tried after *Johnson*, no motion was made to require the availability of the grand jury testimony.

Implicit in the argument of the defendant was the duty of the trial prosecutor to take steps to determine what the witness testified to before the grand jury or the duty of the prosecutor who was present at the grand jury proceedings to inform the trial prosecutor of what the witnesses had testified to. In order to fulfill his obligation, the trial prosecutor was required to have all of the grand jury testimony of the witnesses transcribed, in spite of the holding in *Aughinbaugh*, and in spite of the absence of any motion by the defendant; or, to confer with the prosecutor who conducted the grand jury proceedings and to ask

him to recite the testimony of the witnesses on the chance he would hear something favorable to the defendant. The duty imposed upon the prosecutor before the grand jury was to have all the testimony transcribed and to determine what evidence might be favorable to a defendant; or, if the testimony was not transcribed, to remember all the testimony, to determine what might be favorable to the defendant; and, in either case, whether the testimony was transcribed or not, confer with the trial prosecutor and inform him of the testimony which might be considered favorable to the defendant.

In 1968, there were 4462 indictments returned. The assistant State's Attorney who conducted the grand jury proceedings in this case was Edwin Spiro, whose sole assignment was, and had been for several years, the processing of cases through the grand jury. It is safe to say that of the 4462 indictments returned in 1968, he processed well over half of them. This record shows that the testimony before the grand jury was presented, like most cases before that body, in a brief, perfunctory manner, satisfying the requirements of probable cause. It was not an investigatory procedure. Under the circumstances, to have expected Spiro to note the favorable aspect of Dean's testimony (which in some other aspects could be considered damaging to the defendant), four months later to remember it out of the thousands of other witnesses he had heard, and to confer with the assistant State's Attorneys who were about to try the case, is to require too much of a mere mortal. It is one thing to say that there is no justification for failing to notify the defendant of Dean's testimony while recognizing that there are difficult administrative problems in devising a procedure ensuring the flow of information from the assistant prosecutor in the grand jury to the trial assistant. It is quite another to provide a solution for those difficult administrative problems.

■■ It should be noted that, unlike *Napue* and *Giglio*, this case does not involve the knowing use of perjured testimony. And unlike those two cases, this case does not involve an overt act on the part of a prosecutor—the promise of immunity or leniency. An accomplice who testifies without hope of immunity or leniency is a rare one indeed; but even less rare is a trial prosecutor who would not know that the accomplice would be cross-examined about promises; and no trial prosecutor worth his legal salt would not endeavor to learn whether and by whom any promises had been made to the witness. In *Giglio*, the trial prosecutor did confer with DiPaola, and discussed whether any agreements had been made. Moreover, that *Giglio* was an exceptional case is evidenced by the fact that the United States' attorney was personally involved in the negotiations with the witness. In this case, there

were no unusual circumstances that should have alerted the trial prosecutors to the need to examine Dean's grand jury testimony. As noted, the defense had made no motion for grand jury testimony. The State had complied with the discovery motion. The nature of the case requires the conclusion that the police interviewed Dean. It is unreasonable to believe that they did not reduce that interview to some form of writing, either his written statement or a memorandum containing what he had told the police. We think it significant that the affidavit of the trial attorney did not specifically negate the reception of a police statement of Dean's. The prosecutor had submitted the name and address of Dean in answer to the discovery motion. We judge, therefore, that there was no duty on the part of the trial prosecutor to ascertain what Dean's grand jury testimony was and that the defense has failed to establish any suppression of favorable evidence on the part of the State.

By our holding, we are not judging that the State may never be considered to have suppressed evidence because that evidence may have been heard before a grand jury. Each case must rest on its own facts. *Giglio,* we add, addressed itself specifically only to a promise of immunity. When the Supreme Court said (405 U.S. at 154): "To the extent *this* places a burden on the large prosecution offices, procedures and regulations can be established to carry that burden * * *" (emphasis added), it was referring to its holding in the preceding sentence that the promise made by one particular government attorney must be attributed to the government. We do not believe that the language of *Giglio* may be considered a sweeping principle of law that attributes knowledge to all assistant prosecutors of every statement made to any of them.

In *Moore v. Illinois,* 408 U.S. 786, 33 L.Ed.2d 706, 92 S.Ct. 2562, it was held that the failure to produce a police statement was not a denial of due process under the circumstances. The distinction sought to be drawn that *Moore* involved information given to the police, while in this case information was given to the grand jury in the presence of the prosecutor, is a specious one. The law makes no such distinction. For example, in *People v. Galloway,* 59 Ill.2d 158, 319 N.E.2d 498, the court held that information in the possession of the police, not the prosecutor, and withheld from the defendant was a denial of due process. The prosecutor may not deliberately insulate himself from sources of information and he should be held to account where the information could have been acquired by reasonable diligence (*People v. Galloway,* 59 Ill.2d 158, 319 N.E.2d 498), but he should not be expected to be omniscient.

■■ In a post-conviction hearing the burden is on the petitioner to

show that he was deprived of a substantial constitutional right. The defendant, therefore, has the burden of proving that he was unaware of what Dean's version of the occurrence was. First, there is no showing when or how the defendant acquired the grand jury transcript. For all we can determine, he personally could have had it at the time of trial. The affidavit of the trial attorney does not maintain that the defense did not interview Dean. The affidavit alleges that the State provided written and oral answers to his request for written and oral statements. Significantly, as we have previously noted, the affidavit does not maintain that no statement of Dean's was included. The affidavit pointedly asserts that at no time did the attorney "receive notice of *this* statement" (emphasis added), meaning the testimony of Dean before the grand jury.

For these reasons, we judge that the defendant has failed to prove the denial of a substantial constitutional right. The judgment of the circuit court is affirmed.

Judgment affirmed.

BURKE, P. J., concurs.

Mr. JUSTICE SIMON, dissenting:

This appeal required the court to decide what circumstances trigger the State's duty to disclose to a criminal defendant information in its exclusive possession which is exculpatory or helpful to the defense. In *Brady v. Maryland* (1963), 373 U.S. 83, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

Charles Jones admitted shooting the deceased, George Johnson. The only factual issue at trial was what happened immediately prior to the shooting. Two directly conflicting accounts were presented to the trial judge: defendant testified that he shot the deceased only after the deceased punched him in the jaw and pulled a gun out of his belt; the version of the State's two witnesses was that there was an argument, and the defendant and the deceased looked like they were about to fight, but no blows were struck, and no gun was drawn by the deceased. Dean was not called as a witness at trial but his testimony before the grand jury corroborated defendant's with respect to a fist fight occurring immediately prior to the shooting. Had Dean's evidence been considered at trial, the trial judge might have been swayed on the issue of self-defense, or might have concluded that the deceased struck the defen-

dant, and found defendant guilty of voluntary manslaughter instead of murder. Thus, the materiality and favorable character of Dean's testimony is clear (see *People v. Nichols* (1975), 27 Ill.App.3d 372, 385-386, 327 N.E.2d 186), and the majority does not dispute that these requirements of *Brady* were met.

I dissent because I disagree with the majority's conclusion that the defendant's request for production did not include Dean's grand jury testimony. Even absent a request, the testimony was so material and favorable to the accused that the State had a duty to disclose it. I also disagree wih the majority's view that the testimony was not suppressed.

The majority reasons that the defendant's request for "statements" of the State's witnesses should not be construed to include grand jury testimony and, therefore, did not satisfy the *Brady* condition that the State's obligation is to produce favorable evidence "upon request." This reasoning does not give full play to the expectations of *Brady* expressed in classic language that a fair trial must be accorded those charged with crime:

> "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in the courts.'" (*Brady v. Maryland* (1963), 373 U.S. 83, 87.)

As I view *Brady* and the cases developing it, the concept they champion is that due process requires the State to supply a defendant with any favorable evidence in its possession. To accomplish this purpose a request for production must be liberally construed and doubts resolved in favor of production; the State should not narrow the request by quibbling over the meaning of the language used or avoid production by technical interpretations of what the defendants seeks.[1]

---

[1] The usual criminal defendant is not on an equal footing with the State in his capacity to assemble evidence. In many instances at the time this defendant was tried an accused had no way of knowing the details of the evidence reposing in the State's files or in the memory of its attorneys or investigators. This provides an additional reason for interpreting requests for statements liberally. See *Wardius v. Oregon* (1973), 412 U.S. 470, 475, n. 9, and *Application of Kapatos* (S.D.N.Y. 1962), 208 F.Supp. 883, 888. In *Kapatos*, Edmund L. Palmieri, a United States District judge, with long, varied and distinguished experience said:

> "The purpose of a trial is as much the acquittal of an innocent person as it is the conviction of a guilty one. The average accused usually does not have the manpower or resources available to the state in its investigation of the crime. Nor does he have access to all of the evidence, much of which has usually been removed or obliterated by the time he learns that he is to be tried for the crime."

To conclude that the defendant's motion requesting "statements" did not implicitly constitute a request for all evidence inconsistent with the State's theory of guilt, including grand jury testimony, reduces the truth-seeking adversary process to a contest the outcome of which depends on the relative skill of the players—the defense counsel and the prosecutor. The extent of constitutionally required disclosure is not dependent upon the proficiency with which counsel drafts his request. (*United States v. Hibler* (9th Cir. 1972), 463 F.2d 455, 459; *Barbee v. Warden* (4th Cir. 1964), 331 F.2d 842, 846.) In *Hibler*, the court said at page 459:

> "The test is whether the undisclosed evidence was so important that its absence prevented the accused from receiving his constitutionally-guaranteed fair trial. That defense counsel did not specifically request the information, that a 'diligent' defense attorney might have discovered the information on his own with sufficient research, or that the prosecution did not suppress the evidence in bad faith, are not conclusive; due process can be denied by failure to disclose alone."

The observation of the court in *Barbee* at page 846 was:

> "In gauging the nondisclosure in terms of due process, the focus must be on the essential fairness of the procedure and not on the astuteness of either counsel."

Requiring defense counsel to have used words other than "statements" in his production request in order to reach Dean's grand jury testimony elevates form over substance. The defendant's right to be informed of Dean's testimony should not turn upon his attorney's ability to foresee that a man who was one of three witnesses chosen by the prosecution to testify before the grand jury, who was listed by the State as a prospective witness for the prosecution, who was a friend of and had been drinking with the deceased moments before his death, and who physically assaulted the defendant immediately prior to the shooting would give testimony that contradicted the prosecution's theory of the crime and corroborated the testimony of the defendant.[2]

The majority observes that at the time defendant's request for pro-

---

[2] *Barbee* held that the State's failure to produce the opinion of a ballistics expert that a gun produced in the courtroom was not the weapon used in the shooting involved in that case was error. The court said that defense counsel may have been misled into thinking that ballistics tests, if made, supported the State's theory and were adverse to his client, because otherwise the prosecution would not have produced the gun in court. Similarly, in this case defense counsel may have been misled into thinking that Dean, if called as a witness, would support the State's version of the incident, and that otherwise the prosecution would not have had him in the courtroom available to testify as a witness.

duction was made grand jury testimony was available in Illinois only after the witness testified at trial. From this, the majority argues that the defendant's request was not intended to include Dean's grand jury testimony and the prosecutor and judge in interpreting the request could not be expected to anticipate that it did. By the same token, the fact that grand jury testimony was not generally available to defendants at that time excuses defense counsel from specifically requesting it since he could anticipate that such a request would be useless. However, the policy of the State with respect to the availability of grand jury testimony for discovery purposes when the defendant was tried does not excuse the State from its obligation under *Brady* to disclose information, regardless of the manner in which the State obtained it. The paramount concern is that justice be done; this necessarily implies that the defendant be given the opportunity to review all evidence in the State's possession favorable to him regardless of whether his request specifically described it.

The cases developing *Brady* have noted that the failure to make a request is not under all circumstances a waiver of the right to receive favorable material. These cases have held that due process is denied when hindsight demonstrates the existence of highly material undisclosed evidence that could have been put to considerable use by the defense; then, even the lack of a request does not excuse the prosecution from coming forward with it. (*Evans v. Janing* (8th Cir. 1973), 489 F.2d 470, 475; *United States v. Hibler* (9th Cir. 1972), 463 F.2d 455, 459; *United States ex rel. Raymond v. Illinois* (7th Cir. 1971), 455 F.2d 62, 66-67; *United States v. Keogh* (2d Cir. 1968), 391 F.2d 138, 147-48; *Levin v. Katzenbach* (D.C. Cir. 1966), 363 F.2d 287; *Barbee v. Warden* (4th Cir. 1964), 331 F.2d 842.) Since Dean's grand jury testimony can be regarded as a "statement," I construe the defendant's request to cover it, but I would also hold that where evidence in the prosecution's possession is so favorable and material as Dean's grand jury testimony was in this case, a defendant's constitutional right to a fair trial requires its disclosure even absent a request.

The distinction drawn in Supreme Court Rule 412(a) and relied upon by the majority between "statements" of witnesses and grand jury testimony has nothing to do with a defendant's right to a fair trial. This rule, which was not in existence when the defendant made his request, is directed to pretrial discovery in general and does not purport to deal with the prosecutor's affirmative duty to disclose or the specificity with which a request must be made.

Relying on *Napue v. Illinois* (1959), 360 U.S. 264, and *Giglio v. United States* (1972), 405 U.S. 150, the majority holds that the State

did not suppress any evidence. The majority concludes that these cases teach only that a conviction should be set aside when the State wittingly or unwittingly allows false evidence to go uncorrected when it appears during trial. I do not construe *Giglio* so narrowly. I interpret that case to place upon a prosecutor's office the obligation to ensure that information favorable to a defendant, once known by one prosecutor in a law enforcement office, will find its way into the hands of the defendant. The law becomes a feeble enforcer of the rights it recognizes when it acquiesces in the principle that a large prosecutor's office is to be regarded as a fragmented activity in which each assistant is deaf, dumb and blind to evidence his coworkers have acquired in dealing with those who are accused, being investigated or indicted. *Giglio*, as I view it, holds that due process requires a general attribution of exculpatory knowledge possessed by any single member of the prosecution's staff to the other members of the prosecutor's office. (405 U.S. at 154.) To hold otherwise would reintroduce the good-faith-bad-faith distinction rejected in *Brady*.

Expediency, the burden or expense of disclosure, and the inconvenience of administering the prosecutor's office in a way which facilitates disclosure do not lessen the State's obligation to act with candor and fairness to those it prosecutes. "Suppression" as used in *Brady* and cases following it means not only hiding or secreting, but includes failure to disclose or nondisclosure. (*Evans v. Janing* (8th Cir. 1973), 489 F.2d 470; *United States v. Hibler* (9th Cir. 1972), 463 F.2d 455; *United States ex rel. Raymond v. Illinois* (7th Cir. 1971), 455 F.2d 62.) Testimony in a legally sanctioned proceeding such as before a grand jury cannot be regarded as for the ears of only the prosecutor in the grand jury room. The obligation to disclose the testimony in this case is not excused by the administrative difficulties which may confront a large prosecutor's office in filtering information from the assistant who presented evidence to the grand jury through different assistants trying a case to the defendant's counsel.

The majority reasons that the assistant State's attorney who obtained the indictment of the defendant was so overwhelmed by his duties of presenting a large number of cases to the grand jury that he could not be expected to know, understand or remember what he heard in the grand jury room. But, the assistant State's attorney presents only one case at a time to the grand jury, and questions only one witness at a time. The assistant who presented the case to the grand jury was seeking an indictment for murder and knew the elements of that offense. In response to a question he asked Dean, he elicited information inconsistent with the guilt of the accused and the State's theory of the

crime. The importance of this evidence must have been manifest to a prosecutor whose sole assignment for several years was to process cases through the grand jury. To require under these circumstances that the grand jury prosecutor note the evidence and communicate his knowledge to the trial prosecutor, if only by a memorandum placed in the file, is not so burdensome a procedure as to outweigh the right of an accused to receive a fair trial. Other administrative solutions might include hiring additional State's attorneys to relieve the grand jury prosecutor, if he is overworked, or instituting a procedure where the same assistant follows the case from the grand jury through to trial. The point, however, is that neither the heavy workload of the State's Attorney's office nor a system which fails to disclose favorable evidence produced before the grand jury excuses the obligation of the State under *Brady,* overrides a defendant's constitutional rights or justifies a person being in prison who otherwise might not be.

The majority also concludes that the trial prosecutor had no duty to take affirmative steps to ascertain the nature of Dean's grand jury testimony. This is irrelevant because under *Giglio* the failure of the State's Attorney to provide the defendant with the favorable evidence of which the assistant who conducted the grand jury proceedings was aware was sufficient to deny the defendant due process.

Whether recording and transcribing the grand jury testimony was a constitutional requirement and whether the practice in Cook County at the time was to record and transcribe such testimony are also irrelevant. The fact is that the grand jury testimony in this case was recorded and also transcribed, although it does not appear from the record when the transcription occurred. Even untranscribed stenographic notes in the possession of the court reporter employed by the State to record grand jury testimony must be regarded as written material in the possession of the State's Attorney. (*People v. Gray* (1972), 7 Ill.App.3d 526, 535, 288 N.E.2d 26; *People v. Davis* (1968), 103 Ill. App.2d 418, 244 N.E.2d 381.) Leaving grand jury testimony favorable to a defendant buried in a court reporter's notes should not excuse failure to inform the defendant of such testimony since this provides too easy an escape from the disclosure requirement of *Brady.*

I disagree also with the majority's overly narrow reading of the defendant's post-conviction petition. Attached to the petition is the affidavit of defense counsel alleging that the State did not provide notice of Dean's favorable statement made before the grand jury. This satisfies me that the substance of Jones' assertion is that he was unaware of Dean's version of the occurrence, and this court should accept the substance of the petition rather than try to discover details which it may

not have covered. Assuming the truth of the allegation, as we must on a motion to dismiss the petition, it is sufficient to establish the deprivation of a substantial constitutional right. If the position of the State is that defense counsel had knowledge of Dean's testimony prior to trial, it may raise that as a factual issue to be resolved at the post-conviction hearing. It should not be necessary, however, for the post-conviction petition to anticipate every possible detail the State might raise at the evidentiary hearing on the petition.

To conclude, as does the majority, that the defendant was afforded a fair trial even though he did not have the opportunity to present evidence which could conceivably have altered the outcome is inconsistent with the cases inspired by the idea expressed by Judge Simon E. Sobeloff when as Solicitor General of the United States addressing the Judicial Conference of the Fourth Circuit on June 29, 1954 he said: "My client's chief business is not to achieve victory but to establish justice."